2006 UT App 204

**Maria Del Carmen Suastegui ALBORES, Petitioner and Appellant,**

v.

**Agustin BRACAMONTES, Respondent and Appellee.**

No. 20050133–CA.

Court of Appeals of Utah.

May 25, 2006.

Waine Riches, Salt Lake City, for Appellant.

Before BENCH, P.J., McHUGH and ORME, JJ.

## OPINION

ORME, Judge:

¶ 1 Petitioner Maria Albores argues that the district court erred in dismissing her petition for custody on the theory she lacked standing because she did not bring a divorce or paternity action. We agree that the court erred and reverse.

## BACKGROUND

¶ 2 In July of 2004, Albores, after seeking legal assistance in the free clinic operated by her present counsel,[1] filed a petition, and later that month an amended petition, for custody of her daughter. The amended petition was served shortly thereafter on Respondent Agustin Bracamontes, the father of the child. Bracamontes never responded and his default was entered in December. In January 2005, the court, without giving Albores any notification or opportunity to appear, signed a written ruling dismissing the custody petition. The court explained that it did so because the petition was "without any request that the court determine the standing of the parties to bring such action, such as a divorce or an action to establish paternity." Albores now appeals, arguing that a custody matter is justiciable separate and apart from actions of divorce or paternity and thus, she was not required to include such a request in her petition.

## ISSUE AND STANDARD OF REVIEW

¶ 3 The district court's order implies that Albores lacked standing to bring a petition for custody of her child. Consequently, whether a petition for custody may be brought on its own, and not only as an adjunct of an action for divorce or paternity, is a question of law. *See Pearson v. Pearson,* 2006 UT App 128, ¶ 12 ("Generally a person's standing to request particular relief presents a question of law."). Thus, we reverse the district court's apparent determination that a custody dispute is not actionable by itself for correctness. *See Gutierrez v. Medley,* 972 P.2d 913, 914–15 (Utah 1998).

1. For over six years, Waine Riches, the Utah State Bar's Pro Bono Attorney of the Year for 2002, ran "Waine's Clinic," a pro bono clinic for self-represented litigants. He volunteered a great many hours teaching individuals about divorce and providing free assistance with the pro se packets distributed by Utah Legal Services. Each year his clinic helped thousands of individuals who had no other source of legal assistance. Unfortunately, Mr. Riches was forced to close his clinic in 2005 because he was without the personal resources to continue to volunteer such massive amounts of time to the clinic.

## ANALYSIS

### I. Issue Preservation

¶ 4 Although no pleading was filed in opposition to her petition and no appellee's brief has been filed on appeal, Albores anticipates that this court might be concerned that the issue being presented was not raised below and thus not preserved for appeal. The general rule is that in order to appeal an issue, "a party must timely bring the issue to the attention of the trial court, thus providing the court an opportunity to rule on the issue's merits." *LeBaron & Assocs. v. Rebel Enters.,* 823 P.2d 479, 482–83 (Utah Ct.App. 1991). This doctrine does not apply, however, when the alleged error first arises in the lower court's final order or judgment and thus, leaves no opportunity for the party to object below or to bring issues to the attention of the trial court. *Cf.* Utah R. Civ. P. 46 ("[I]f a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him."); *Delatore v. Delatore,* 680 P.2d 27, 29 (Utah 1984) (addressing defendant's challenge to an award of attorney fees for the first time on appeal because the court awarded fees "after both parties had presented their evidence" and thus, "there was no opportunity for the defendant to object" to the award); *Shields v. Harris,* 934 P.2d 653, 656 n. 1 (Utah Ct.App.1997) (reaching the merits of the appeal because appellant was "surprised" by a contract term appearing for the first time in the judgment below and appellant "had no opportunity to object in the ordinary course of events").

¶ 5 When Albores filed her petition for custody, there was apparently no reason for her to include any discussion of standing to seek a divorce or a paternity determination, and she was seeking neither of these results.[2]

2. In fact, the Uniform Act on Paternity, which contained the parentage provisions in force at the time of Albores's petition, did not provide for, much less require, child custody determinations to be joined with a judicial proceeding to adjudicate parentage. *See* Utah Code Ann. §§ 78–45a–1 to –17 (2002) (repealed 2005). That act has since been replaced by the Utah Uniform Parentage Act, *see id.* §§ 78–45g–101 to –902 (Supp. 2005), and while the current version provides that a proceeding for custody *may* be joined with a proceeding to adjudicate parentage, it does not

The trial court, without requesting written briefing or oral argument, dismissed the petition based on the lack of standing to bring a petition for custody outside the context of a divorce or paternity action. This unexpected denial left Albores completely without occasion to object to the court's unilateral imposition of such a requirement.

¶ 6 It is also somewhat procedurally peculiar that the trial court would have focused on standing to deny Albores's custody petition. Since Bracamontes here was in default and not actively participating in the case, no party had raised the issue of standing and Albores's petition was completely unopposed. That said, we recognize that in many contexts standing does have jurisdictional implications, leaving the trial court free to address standing issues sua sponte. *See State v. Tuttle,* 780 P.2d 1203, 1207 (Utah 1989) ("Standing is an issue that a court can raise *sua sponte* at any time."), *cert. denied,* 494 U.S. 1018, 110 S.Ct. 1323, 108 L.Ed.2d 498 (1990). *But see, e.g., State v. Rodriguez,* 841 P.2d 1228, 1229 (Utah Ct.App.1992) ("Fourth Amendment standing is a substantive issue, not a jurisdictional issue. It is therefore waived by the state if not raised at trial."). Thus, we will address the merits of the district court's decision premised on standing concerns.

## II. Open Courts Doctrine

¶ 7 The Utah Constitution provides that district courts in Utah are courts of general jurisdiction, "hav[ing] original jurisdiction in all matters except as limited by this constitution or by statute." Utah Const. art. VIII, § 5. Further, the Utah Constitu-tion provides that there shall be a remedy for every legal wrong and guaranties that Utah courts "are open to all litigants for the redress of grievances or the enforcement of rights." *Brady v. McGonagle,* 57 Utah 424, 195 P. 188, 191 (1921). *See* Utah Const. art. I, § 11. The interplay of these two provisions means that, in the absence of a contrary direction by the Legislature, district courts have jurisdiction to handle all legally cognizable disputes that are brought before them. *See State v. Johnson,* 100 Utah 316, 114 P.2d 1034, 1039 (1941) ("The right of the District Court to hear and determine for itself, upon its own record, any cause which is lawfully before the court cannot be denied because the Constitution grants it the jurisdiction to make an original determination."). This proposition "is elementary in the jurisprudence of this country." *Brady,* 195 P. at 191.

¶ 8 The district court's order here, however, implies that the court is powerless to address a child custody issue unless it is brought in either a divorce or a paternity action. While the divorce and paternity statutes certainly have provisions that deal with custody questions, *see* Utah Code Ann. § 30–3–10 (Supp.2005); *id.* § 78–45g–610(1) (Supp.2005), it does not follow that the Legislature has restricted a district court's ability to make custody determinations to these specified instances and that the judiciary is otherwise without power to deal with child custody issues.[3] Such a limitation on the district court's power cannot be inferred, but rather, under the open courts doctrine, district courts must be open to address child custody

---

suggest that a proceeding for child custody *may not* be brought independently. *See id.* § 78–45g–610(1).

3. For one thing, the determination of child custody questions is also specifically contemplated in actions for separate maintenance, *see* Utah Code Ann. § 30–4–3(1) (1998), in addition to divorce and paternity proceedings. Moreover, even if the Legislature were to specify that child custody determinations could only be properly considered as part of actions for divorce and paternity, such a determination might not withstand a constitutional challenge. Under the open courts doctrine, such restrictions must "provide[ ] an injured person an effective and reasonable alter-native remedy" that "provid[es] essentially comparable substantive protection." *Berry v. Beech Aircraft Corp.,* 717 P.2d 670, 680 (Utah 1985). Otherwise, the restriction "may be justified only if there is a clear social or economic evil to be eliminated and the elimination of an existing legal remedy is not an arbitrary or unreasonable means for achieving the objective." *Id.* Thus, if there is no adequate alternative remedy for parents disputing custody who are not in a position to divorce and who do not question paternity, and if there is no social evil to be combated by prohibiting self-standing custody actions, such a restriction by the Legislature would be unconstitutional.

grievances even when unaccompanied by divorce or paternity issues.

¶9 We readily agree with Albores that situations exist in which a parent may require a district court's assistance to make a custody determination in the absence of any particular need for a divorce or a paternity determination. In this very case, we have an uncontroverted verified complaint indicating there is no dispute that Bracamontes is the child's father and that Albores is the child's mother. Further, there is no claim that the parties were ever married—and even if they are married, there is no indication that Albores is interested in obtaining a divorce. Although we assume the parties here were never married, we acknowledge that there are surely circumstances under which a married couple—for reasons of religion, insurance, immigration status, or on some other basis—may not want to divorce, yet may need the court's assistance to settle a custody dispute. Thus, the Utah Constitution's guaranty that the courts of this state will be open to address these grievances greatly outweighs any concern the trial court may have had with the administrative complications of self-standing custody actions.[4]

## CONCLUSION

¶10 Although the issue raised by this appeal was not specifically preserved below, we determine that Albores may appeal and argue district court error because the error first appeared in the court's ruling and Albores did not have the opportunity to object before the court issued its order of dismissal. Reaching the merits of the issue, we hold that under the open courts provision of our Constitution, the district court may not refuse to hear custody cases simply because those cases are devoid of a divorce or paternity context. We therefore vacate the dis-

trict court's order and remand for such further proceedings as are now appropriate.[5]

¶11 WE CONCUR: RUSSELL W. BENCH, Presiding Judge, and CAROLYN B. McHUGH, Judge.

---

**4.** According to Albores, Third District Commissioners twice requested Mr. Riches to refrain from assisting pro se litigants in filing standalone custody actions. They requested he instead direct his clients to file only paternity actions and divorce actions. The exact motivations behind such requests are unclear; however, the requests appear to have been motivated by administrative concerns regarding the clerical difficulties in dealing with non-uniform methods of petitioning for child custody.

**5.** Given the importance of the best interests of the child when determining custody, *see* Utah Code Ann. § 30–3–10 (Supp.2005), and by analogy to the rule that there is no pure default judgment in divorce cases, *see id.* § 30–3–4(1)(b) (1998), the trial court surely may require Albores to appear before the court and offer testimony to support her petition on the merits.