1999 UT App 127

**Mary M. TUCK, Plaintiff and Appellee,**

v.

**S. Chad GODFREY, an individual; and The Beehive House, a Utah limited partnership, Defendants and Appellant.**

**No. 981118–CA.**

Court of Appeals of Utah.

April 22, 1999.

---

Kim R. Wilson, David L. Pinkston, and Paxton R. Guymon, Salt Lake City, for appellant.

Ronny L. Cutshall and Vincent C. Rampton, Salt Lake City, for appellee.

Before: WILKINS, P.J., and BENCH and BILLINGS, JJ.

## OPINION

BILLINGS, J.

¶1 Appellant S. Chad Godfrey appeals the trial court's entry of a default judgment against him for failure to comply with discovery requirements. We affirm.

## FACTS

¶2 This case originated as a dispute over whether defendants S. Chad Godfrey (Godfrey) and Beehive House (Beehive) were required to repay funds given them by plaintiff Mary Tuck (Tuck).[1] Beehive is owned by B. Ralph Godfrey (Ralph Godfrey), and operated by his family. At times relevant to this action, Godfrey was employed by Beehive or Beehive Health, an affiliated company.

¶3 For about two years, until late in 1995, Tuck was a resident of Beehive House, a retirement living center. During this time, she wrote several checks to Godfrey and Beehive, totaling approximately $380,000. While most of the checks were marked "loan" or "investment," no money has been repaid by either Beehive or Godfrey. Tuck filed a complaint against the defendants[2] alleging breach of contract and unjust enrichment. Defendants have taken the position that the funds paid to Godfrey and Beehive were either gifts or were forgiven at a later time.

¶4 Tuck's attorney scheduled Godfrey's deposition for August 19, 1996, and sent notice of the deposition on August 7, 1996, to the attorney for both Godfrey and Beehive. The notice of deposition included a request for production of documents, requir-ing Godfrey to bring the documents to his deposition. Godfrey's attorney notified Tuck's attorney that Godfrey was unavailable to be deposed on the date noticed, stating that Godfrey was out of Utah and would not return until the middle of September. He did not explain Godfrey's absence nor reveal Godfrey's whereabouts.[3] Tuck's attorney refused to postpone the deposition.

¶5 The parties attempted to resolve the difficulty through negotiations, including proposed stipulations to sanctions. Though the parties tentatively agreed on a new deposition date, Beehive rejected the proposed stipulation to default sanctions in the event of Godfrey's failure to appear. Absent any agreement, Tuck's attorney filed a motion for sanctions with the trial court, requesting the entry of default against both defendants for Godfrey's failure to appear at the scheduled deposition.

¶6 Godfrey's attorney filed a memorandum opposing the motion for sanctions, and additionally filed a motion for a protective order. The motion for a protective order sought to protect Godfrey from the "undue burden, expense and oppression [of] having to appear at his deposition as Noticed by plaintiff." The motion did not provide any factual background explaining why Godfrey would experience any undue burden, nor did the motion state any concerns with, or objections to, the request for documents included in the deposition notice.

¶7 The motion for sanctions and the motion for a protective order came before the trial court for hearing on March 28, 1997. By that time, Tuck had died, and Godfrey had returned to Utah and was available to be deposed. The court denied the motion for a protective order. Though the court did not enter default against either Godfrey or Bee-

---

1. While this lawsuit was pending, Mary Tuck died. Her estate is now the plaintiff of record.

2. Though the complaint is lodged against two defendants, only one, S. Chad Godfrey, appeals the order granting discovery sanctions. The trial court entered default against Godfrey, and certified the issue for appeal under Rule 54(b) of the Utah Rules of Civil Procedure, even though the original litigation continues against Beehive. This appeal is properly before this court because the issues surrounding discovery sanctions are distinct from the issues underlying the original litigation. *See Kennecott Corp. v. Utah State Tax Comm'n*, 814 P.2d 1099, 1103 (Utah 1991).

3. Godfrey was actually incarcerated in a federal prison at this time. Under Rule 30(a), "[t]he deposition of a person confined in prison may be taken only by leave of court." Utah. R.Civ.P. 30(a). However, Godfrey refused to reveal his whereabouts, either to plaintiff or to the court, and therefore was not excused from the deposition requirement.

hive, the court did impose sanctions against Godfrey for his failure to appear at his deposition, ordering him to pay attorney fees to Tuck for the cost of the motion for sanctions. The court stated, "I am very concerned about Mr. Godfrey's conduct in this case based on the information I have at this juncture.... I want him to get the message. His conduct is woefully inadequate and completely unacceptable."

¶ 8   The court ordered Godfrey to pay the attorney fees, or face default if he failed to do so. Only after such payment could Godfrey's deposition be rescheduled. Further, the court stated, "[Godfrey] will otherwise need to comply with the discovery request in the future." The order reflecting the court's bench rulings instructed the parties to reschedule Godfrey's deposition. No sanctions were imposed on Beehive.

¶ 9   On June 3, 1997, Tuck's attorney sent a Notice of Deposition to defendants, scheduling depositions for both Godfrey and Ralph Godfrey in July 1997. As in the August 7, 1996 notice of deposition, this deposition notice again included the request for documents.[4] The depositions were scheduled for July 10 and 11, thereby giving defendants more than thirty days notice to produce the documents requested in the new notice, in compliance with Rule 34 of the Utah Rules of Civil Procedure. The document request applied to both deponents, and they were required to bring the documents with them to the depositions.

¶ 10   As the date of the depositions approached, the parties agreed to a slight change in scheduling—the documents were to be produced to Tuck's attorney on July 10 for review, while both Godfrey and Ralph Godfrey were to be deposed on July 11. No documents were delivered on July 10. Both Godfrey and Ralph Godfrey appeared for their depositions as scheduled on July 11. They brought an envelope containing some documents responsive to the discovery requests. However, they did not bring the requested bank records, checks, or ledgers, nor did they object to any of the document requests. Because of noncompliance with the document request, Tuck's attorney chose not to depose Godfrey, concluding that deposing Godfrey without the bank records would be unproductive. Ralph Godfrey was deposed, and explained in part the absence of the records.

¶ 11   According to Ralph Godfrey, the records could not be found, but Beehive was still looking for them. He acknowledged that the records existed, were regularly kept, and they had not been destroyed. He testified that, although earlier sporadic attempts had been made to find the records, it was only on July 10 that "we really went for it, more or less, and had everybody try to go help us find these [documents]." Though the documents requested were the property of Beehive, Godfrey did not object to the request for documents as it applied to him personally. In fact, Godfrey was involved in the attempts to find the documents.

¶ 12   Based on the failure to produce the documents, Tuck's attorney filed a second motion for sanctions under Rule 37(d) of the Utah Rules of Civil Procedure, again requesting that default be entered against both defendants. He contended the failure to produce the records fundamentally impeded his ability to prove or disprove the merit of Tuck's allegations.

¶ 13   The second motion for sanctions came before the trial court for hearing. At the outset, the trial court made it clear that, based on the history of the case, sanctions were appropriate. The only issue was what the sanctions would be. Regarding Godfrey, the court expressed concern that Godfrey did not fully comply with the first order, stating "I understand [the first order granting sanctions] related to the deposition but it also had to do with the ... production of documents as well." The court noted that Godfrey had

---

4.   The discovery request included:
   All bank statements or other records of deposit indicating what disposition the Beehive House or S. Chad Godfrey made of funds paid by plaintiff Tuck through tender of the checks attached to the complaint.... Any and all can-

celed checks, check registers, ledgers, accounting records, or other documents of any nature or description reflecting the disposition which S. Chad Godfrey or the Beehive House made of any of the funds transferred by means of the checks attached to plaintiff's complaint.

done nothing to produce the documents between the time of the original sanction hearing and the June notice of deposition, even though the discovery request was first served in August 1996, and a court order was in place emphasizing the importance of discovery.

¶ 14 The court ordered that Godfrey's pleadings be stricken, and entered default against him. The court found that Godfrey had done "virtually nothing in over a year." Further, the court found that Godfrey "obstructed discovery" by initially concealing his whereabouts, then failing to respond to discovery requests in a timely manner. The court noted that, even if the prior order had not been specific, the document production was clearly due in compliance with the thirty day deadline of Rule 34 of the Utah Rules of Civil Procedure. The court also noted that the prior sanctions had been ineffective in eliciting from Godfrey an appropriate or timely response to discovery.

### ANALYSIS

#### I. *Standard of Review*

■ ¶ 15 Trial courts have "broad discretion in selecting and imposing sanctions for discovery violations, including dismissing the noncomplying party's [pleadings]." *Preston & Chambers, P.C. v. Koller*, 943 P.2d 260, 262 (Utah Ct.App.1997) (citing *Morton v. Continental Baking Co.*, 938 P.2d 271, 274 (Utah 1997)). Appellate courts may not interfere with such discretion unless abuse of discretion is clearly shown. *See Morton*, 938 P.2d at 274. A trial court's abuse of discretion in selecting which sanction to impose may be shown "only if there is either an erroneous conclusion of law or no evidentiary basis for the trial court's ruling." *Id.* (internal quotations and citations omitted).

¶ 16 Further, a trial court may impose sanctions under Rule 37 only after the court finds "willfulness, bad faith, or fault, or persistent dilatory tactics frustrating the judicial process" on the part of the noncomplying party. *Id.* (internal quotations and citations omitted). To support a finding of willfulness, there need only be "any intentional failure as distinguished from involuntary noncompli-

ance. No wrongful intent need be shown." *Utah Dep't of Transp. v. Osguthorpe*, 892 P.2d 4, 8 (Utah 1995) (internal quotations and citations omitted). Once this threshold is met, " 'the choice of an appropriate discovery sanction is primarily the responsibility of the trial judge.' " *Morton*, 938 P.2d at 274 (quoting *First Fed. Sav. & Loan Ass'n v. Schamanek*, 684 P.2d 1257, 1266 (Utah 1984)).

#### II. *Appropriateness of Default Judgment*

¶ 17 Godfrey contends the trial court erred in sanctioning him for failing to produce the documents because there was no factual basis for the sanctions. He also asserts the trial court mischaracterized a prior court order, and therefore was mistaken in relying upon the order to impose sanctions.

■ ¶ 18 In moving for sanctions against Godfrey, Tuck relied on Rule 37(d) of the Utah Rules of Civil Procedure. Under Rule 37(d), sanctions may be imposed "[i]f a party . . . fails . . . to serve a written response to a request for inspection submitted under Rule 34." Utah R.Civ.P. 37(d). The trial court is granted broad discretion in determining "such orders in regard to the failure as are just." *Id.* Included in the options for the court are sanctions specifically listed in Rule 37(b), among which is striking the pleadings and entering default against a noncomplying party. *See* Utah R.Civ.P. 37(b)(2)(C), (d). Thus, a court may enter the sanction of default against a party failing to comply with discovery requirements under Rule 37(d).

¶ 19 Rule 37(d) "allows a court to impose sanctions against a party for disregarding discovery obligations even when that party has not directly violated a court order specifically compelling discovery." *Schoney v. Memorial Estates, Inc.*, 790 P.2d 584, 585 (Utah Ct.App.1990) (footnote omitted). "No court order is required to bring Rule 37(d) into play. It is enough that a notice of the taking of a deposition . . . or a request for inspection has been properly served on the party." *W.W. & W.B. Gardner, Inc. v. Park West Village*, 568 P.2d 734, 738 n. 9 (Utah 1977) (citation omitted).

¶ 20 Utah appellate courts have affirmed default as a discovery sanction when the

required discovery was either late or incomplete. *See, e.g., Morton,* 938 P.2d at 277 (reinstating trial court's default entered against motorist who replied to interrogatories one day after extended discovery deadline); *W.W. & W.B. Gardner, Inc.,* 568 P.2d at 736–37 (affirming default against party who failed to answer interrogatories and holding that imposition of sanctions was not precluded when party presented discovery responses prior to hearing on a motion for sanctions); *Schoney,* 790 P.2d at 584–85 (affirming default against party failing to fulfill discovery obligations though responses were tendered at hearing on sanctions); *Amica Mut. Ins. Co. v. Schettler,* 768 P.2d 950, 962 (Utah Ct.App.1989) (affirming default against insured when insured failed to meet discovery deadlines and was only partially responsive to motion to compel without showing an inability to produce remaining documents).

¶ 21 The discretion granted to trial courts to impose default as a discovery sanction has recently been emphasized. *See Morton,* 938 P.2d at 274–76; *Wright v. Wright,* 941 P.2d 646, 649–50 (Utah Ct.App. 1997). In *Morton,* the Utah Supreme Court reversed this court's determination that the trial court abused its discretion in defaulting a plaintiff for failure to meet a discovery deadline by one day. The supreme court stated that this court rewrote Rule 37 to require egregious behavior but not a *clear* showing of abuse of discretion. *See Morton,* 938 P.2d at 276. The court continued, "[w]e have never expressed any rule which delineates a specific level of behavior which must be met before [R]ule 37 sanctions are warranted." *Id.* The supreme court emphasized that

> a party's conduct merits sanctions under rule 37 if any of the following circumstances are found: (1) the party's behavior was willful; (2) the party has acted in bad faith; (3) the court can attribute some fault to the party; or (4) the party has engaged in persistent dilatory tactics tending to frustrate the judicial process.

*Id.* (citations omitted). In sum, once the threshold determination is made, sanctions are warranted, and the choice of sanctions is the responsibility of the trial judge. *See id.* at 274.

¶ 22 Following *Morton,* this court affirmed default as a discovery sanction even when the sanction seemed "unduly harsh." *Wright,* 941 P.2d at 650. In *Wright,* the trial court entered default against the mother in a custody modification dispute when the mother failed to respond to the father's discovery requests. At the time sanctions were imposed, the mother was unrepresented by counsel, and the father had also failed to respond to the mother's discovery requests. The father asserted that his counsel and the mother's former counsel had agreed that the mother needed to respond first. The default judgment was entered about six months after the modification petition was filed.

¶ 23 This court affirmed the trial court's default order. We agreed with the mother that the sanctions imposed were "harsh and extreme," and that judgments by default were generally "disfavored by the law." *Id.* at 649. This court continued:

> Nevertheless, as the Utah Supreme Court emphasized in its recent decision *Morton v. Continental Baking Co.,* although some of Rule 37's discovery sanctions are harsh and extreme, Rule 37 grants the trial court broad discretion to impose them because the trial court deals first hand with the parties and the discovery process. As such, we will not interfere with the trial court's imposition of discovery sanctions . . . including its choice of sanctions, unless [the party] clearly shows the trial court abused its discretion.

*Id.* at 650 (citations omitted).

¶ 24 In this case, Godfrey argues that default was entered because the trial court mistakenly thought Godfrey had violated a prior court order to compel the production of the documents. Even if accurate, this point is not helpful to Godfrey. He did not raise this issue in the court below, and in fact conceded that the initial order applied to document production as well as deposition attendance. At the hearing on the second motion for sanctions, the trial court stated, "I understand [the first court order granting sanctions] related to the deposition but it also had to do with the . . . production of docu-

ments as well." Godfrey's attorney acknowledged that the court's understanding was correct. Thus, because Godfrey did not challenge the court's perception of the order below, he cannot raise the issue on appeal. *See Ong Int'l (U.S.A.) v. 11th Ave. Corp.*, 850 P.2d 447, 455 (Utah 1993).

¶ 25 Moreover, there are sufficient facts in the record as well as explicit findings to support the trial court's decision. The trial court met the threshold requirement by finding that Godfrey "ha[d] obstructed discovery," thereby attributing to Godfrey some measure of fault or willful behavior. Additionally, the court stated that Godfrey had "done virtually nothing" since the prior sanction hearing, and found its earlier sanctions to have been ineffective. In sum, a sufficient evidentiary basis exists for the trial court's decision, and Godfrey has failed to show a clear abuse of discretion.

¶ 26 Godfrey also argues the trial court erred in entering default for failing to produce documents of which he had neither possession nor control. Under Rule 34 of the Utah Rules of Civil Procedure, a party must produce for inspection those requested documents "which are in the possession, custody or control of the party upon whom the request is served." Utah R.Civ.P. 34(a)(1). Godfrey contends on appeal that he did not have possession, custody, or control of Beehive's bank records, and therefore had no duty to produce them.[5]

¶ 27 Even if Godfrey did not have possession, custody, or control of the documents, he has waived this claim. Under Rule 34, parties have thirty days in which to serve a written response to discovery requests. *See* Utah R.Civ.P. 34(b). Failure to respond in the appropriate time frame may subject the noncomplying party to sanctions under Rule 37. *See* Utah R.Civ.P. 37. Moreover, "[t]he failure to [serve a written response to discovery requests] may not be

excused on the ground that the discovery sought is objectionable unless the party failing to act has applied for a protective order as provided by Rule 26(c)." Utah R.Civ.P. 37(d).

¶ 28 Any challenge to the merits of a discovery request must be timely filed and put before the trial court, or the claim will be waived. *See Schoney*, 790 P.2d at 586 n. 5; *Amica Mut. Ins. Co.*, 768 P.2d at 962. In *Amica*, an insured who failed to comply with discovery requests asserted on appeal that the requests had no merit because they were relevant to damages, not liability. This court held his challenge to the merits of the requests to be untimely because it was raised for the first time on appeal. We emphasized that "[i]t is fundamental that once the production of documents is demanded, a party is obliged to produce them unless he objects or moves for a protective order." *Amica*, 768 P.2d at 962 (citing Utah R.Civ.P. 37(d)).

¶ 29 At no time during the proceedings before the trial court did Godfrey object to the discovery requests as they applied to him. On the contrary, Godfrey sought no protective order requesting relief from having to produce the documents, even though the request was made of him twice. Because Godfrey made no timely objection, Godfrey waived his argument that he had no duty to produce the documents.

## CONCLUSION

¶ 30 Based on the foregoing, we conclude the trial court did not abuse its discretion in striking the pleadings and entering default against Godfrey for failure to comply with discovery obligations. There was a clear factual basis for the entry of the sanctions, and the claim that Godfrey did not have control of the records was waived. Accordingly, the trial court's decision is affirmed.

---

5. Godfrey had actual control of the records in that he could, and did, direct the Beehive records custodian to find them. His directive was not questioned. Additionally, for about two months, the records were stored in the Beehive Health offices, where Godfrey was marketing director, and thus were in his actual possession. More-over, one of the potential off-site storage areas for the records was Godfrey's own house. Thus, at relevant periods in this litigation, after the request for document production had been served, Godfrey had actual possession, custody, or control of the records.

¶ 31 WE CONCUR: MICHAEL J. WILKINS, Presiding Judge, and RUSSELL W. BENCH, Judge.

